**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 2, 2020**

# In the Court of Appeals of Georgia

A20A0204. PERKINS v. HAYES.

COOMER, Judge.

Appellant Aminah Perkins (Mother) and appellee Worth Hayes (Father) are the parents of K. B. H. ("Child"), a male, born in 2012. Mother filed a petition for paternity, child support, and custody. Following a trial, the trial court entered an order granting, among other things, unsupervised visitation between Father and Child. Mother appeals from the trial court's order on custody, visitation, and child support, and contends the trial court erred when it ordered that Father's unsupervised visitation was contingent upon and subject to the recommendations of the guardian ad litem (GAL), issued a blanket denial of her motion to access the GAL's file, and relied upon a report that was neither tendered nor admitted into evidence. Finding no error, we affirm.

In March 2017, Mother filed a petition for paternity, child support, and custody in the superior court. Initially, the parties entered into a consent agreement regarding custody, a parenting plan, and child support. Before the consent agreement was entered as an order of the court, Mother filed a motion to set aside and modify the parties' consent order and motion for the appointment of a guardian ad litem. In her motion, Mother alleged the child made an outcry to his teachers of allegations of sexual abuse by Father. Father and Mother entered a consent order for legitimation, and the case was transferred to the juvenile court.

The juvenile court appointed a GAL to the case and entered a continuance order directing the GAL to locate a reunification therapist and have the child taken to the therapist in order to evaluate whether reunification with Father would be appropriate. The juvenile court also ordered a home study investigation for Father's home. In a confidential reunification assessment report submitted to the juvenile court, the clinical social worker made recommendations regarding the reunification of Father and Child and copies of the report were delivered to counsel for both parties by the juvenile court. Mother and Father attended court ordered mediation and reached a temporary agreement that was memorialized and later entered as a

temporary consent order of the court. Per the agreement between the parents, Father and Child were to begin reunification therapy.

The case was placed on the trial calender for the week beginning June 24, 2019. On June 3, 2019, Mother filed a motion to release the GAL's file. The GAL filed a response in opposition to Mother's motion and the trial court denied Mother's motion. The trial was held on June 25, 2019. On July 8, 2018, the trial court entered its final order on custody, visitation, and child support and its parenting plan order. This appeal followed.

1. Mother first argues the trial court erred when it ordered that Father's unsupervised visitation was contingent upon and subject to the recommendations of the GAL. This enumeration fails because it was rendered moot by subsequent provisions within the order.

> In deciding visitation, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

*Williams v. Williams*, 301 Ga. 218, 220 (1) (800 SE2d 282) (2017) (citation omitted).

In its final order, the trial court gave the following directives:

IT IS FURTHER ORDERED that unsupervised day visitation in Atlanta begin immediately with guidance from the GAL as to the details.

IT IS FURTHER ORDERED that unsupervised visitation with the [Father] in his home in Auburn, Alabama will begin no later than September 1, 2019.

Mother contends the trial court's used of the phrase "with guidance from the GAL" was an improper delegation of the trial court's authority to the GAL. Mother argues that from July 8, 2019 until September 1, 2019, the unsupervised visitation between Father and Child was at the discretion of the GAL. See *Johnson v. Johnson*, 290 Ga. 359, 360 (721 SE2d 92) (2012) (visitation decisions must be made by the trial court and cannot be delegated to another no matter their expertise). However, pretermitting the question of whether the trial court delegated its judicial authority to the GAL, we find that this issue has been mooted by the passage of time. See *Sweet City Landfill, LLC v. Elbert County*, 347 Ga. App. 311, 318 (4) (818 SE2d 93) (2018) ("Mootness, however, is an issue of jurisdiction and must be determined before a court addresses the merits of a claim." (citation omitted)).

4

OCGA § 5-6-48 (b) (3) provides that "[n]o appeal shall be dismissed or its validity affected for any cause nor shall consideration of any enumerated error be refused, except . . . [w]here the questions presented have become moot."

> Consistent with its requirement that appellate courts address only those rulings that "may affect the proceedings below," OCGA § 5-6-34 (d) expressly provides that "[n]othing in this subsection shall require the appellate court to pass upon questions which are rendered moot." Thus, the general rule is that appellate courts do not consider moot questions. Mootness is a question of court policy based on the theory that courts do not give opinions on abstract propositions of law that do not involve an actual controversy between parties.

*In re T.H.*, 319 Ga. App. 216, 218 (735 SE2d 287) (2012) (citations and punctuation omitted). Here, the provision in question ordered unsupervised day visitation between Father and Child to begin immediately from the date the order was entered. A later provision broadened unsupervised visitations between Father and Child to in-home visits beginning no later than September 1, 2019. It is undisputed that the allegedly improper provision covered the period from July 8, 2019 (the day the order was entered) until on or about September 1, 2019, the day the trial court ordered unsupervised visits in Father's home to begin. Mother filed her notice of appeal on July 15, 2019 and her brief on September 5, 2019. Mother did not request an

injunction pending appeal from the trial court or the Court of Appeals to keep the provisions for unsupervised visitation from going into effect. More importantly, in her brief on appeal, Mother concedes that the provision in question appears "to be moot." Thus, inasmuch as this enumeration became moot on or about September 1, 2019, when Father was granted broader unsupervised visitation rights, this Court is left with nothing to consider on appeal.

Moreover, we are unpersuaded by Mother's assertion that the alleged error meets the narrow exception to mootness. Aside from Mother's conclusory statements, she provides no factual or legal basis upon which this Court could conclude that the narrow exception to mootness for disputes that are capable of repetition, yet evading review should apply here. See *Elgin v. Swann*, 315 Ga. App. 809, 810 (1) (728 SE2d 328) (2012) ("[I]f an issue is capable of repetition yet evades review, we do not view that issue as moot." (citation omitted)). Even if this Court were to reverse the provision regarding the unsupervised day visits in Atlanta, it would not alter the later visitation provision allowing for in-home unsupervised visits between Father and Child in Alabama. See *Dean v. City of Jesup*, 249 Ga. App. 623, 624 (2) (549 SE2d 466) (2001) ("If, however, reversal of a trial court's judgment is of no practical benefit to the parties, any issues raised on appeal are rendered moot." (citation

6

omitted)). Thus, it is speculative, at best, that the issues raised by Mother are capable of repetition.

2. Mother next argues the trial court erred by denying her motion for access to the GAL's file. We disagree.

The record shows that discovery ended August 31, 2018. On June 3, 2019, Mother filed her motion for release of the GAL's file. The GAL filed a response in opposition to the motion and request for a protective order of the file on June 5, 2019. Mother did not request a hearing on her motion, and she did not request a ruling on the motion prior to the start of trial. The trial commenced on June 25, 2019. Following the conclusion on Mother's and Father's cases in chief, the GAL testified and rendered his recommendations. Both Mother and Father were given the opportunity to cross-examine the GAL. While the record shows that the trial court denied the motion on June 25, 2019, the order was not filed with the clerk's office until July 8, 2019. At no time before, during, or after the trial, did Mother move for a ruling on her motion and we find no indication that Mother objected to proceeding to trial without a ruling made or any other effort to elicit a ruling on her motion. Consequently, this enumeration of error presents nothing for review. *Ware v. Fidelity Acceptance Corp.*, 225 Ga. App. 41, 42 (1) (482 SE2d 536) (1997) (claim of error

7

waived where there was no evidence appellant objected to proceeding to trial without ruling on motions).

Notwithstanding the above, even though the trial court in the present case ultimately ruled on Mother's motion, Mother has not demonstrated that she was entitled to access the GAL's files under Georgia law. In support of her argument, Mother relies OCGA §§ 15-11-104 (k), 15-11-105 (f), and 15-11-170 (e). OCGA § 15-11-104 (k) provides that "[t]he court shall ensure that parties have the ability to challenge recommendations made by the guardian ad litem or the factual basis for the recommendations in accordance with the rules of evidence applicable to the specific proceeding." OCGA § 15-11-105 (f) further states that "[a]ll records and information acquired or reviewed by a guardian ad litem during the course of his or her appointment shall be deemed confidential and shall not be disclosed except as ordered by the court." OCGA § 15-11-170 controls the procedures for discovery. Although Mother makes a correct statement of the law, the statutes upon which she relies concern dependency proceedings under Article 3 of the juvenile code. See OCGA § 15-11-100 ("The purpose of this article is . . . [t]o assist and protect children . . . by providing for the resolution of dependency proceedings in juvenile court; [t]o ensure that dependency proceedings are conducted expeditiously . . .; [t]o ensure that

the health, safety, and best interests of a child be the paramount concern in all dependency proceedings."). See also OCGA § 15-11-170 ("In all cases under [Article 3]. . ."). The action giving rise to this appeal concerns the modification of custody, visitation, and child support, not a dependency proceeding. Thus, we discern no error.

3. Lastly, Mother contends the trial court erred in considering and relying upon material that was not tendered, nor admitted into evidence at trial. Specifically, Mother takes issue with the trial court's findings of fact being based in part on the confidential report generated by a social worker assigned to the case and an email between the GAL and the reunification therapist. Mother argues that because neither the confidential report nor the email exchange were tendered as evidence at trial, the social worker did not appear as a witness at trial or provide testimony by affidavit, and neither the reunification therapist nor GAL testified regarding the email exchange, the trial court erred in relying, at least in part, on those materials. Again, we disagree.

"In a bench trial, the trial judge acts as the trier of fact, and we accept that court's factual findings unless clearly erroneous." *Allen v. Clerk*, 273 Ga. App. 896, 896 (616 SE2d 213) (2005) (citation omitted). Here, in its order on custody, visitation, and child support, the trial court made several findings of fact. The trial

9

court made reference to the observations and recommendations from the court ordered confidential reunification assessment report submitted by a clinical social worker. The trial court also made reference to an email exchange between the GAL and the unification therapist in which the GAL expressed the concerns of a nurse practitioner who has treated Child and stated that according to Mother, the reunification process was causing the child to experience high anxiety and severe stomach aches. The reunification therapist rebutted the nurses suggestion that reunification therapy needed to be stopped and provided the GAL with his own observations and recommendation.

a. With regards to the confidential reunification assessment report, the record shows that after the juvenile court appointed a GAL to the case and entered a continuance order directing the GAL to locate a reunification therapist, the Child was taken to the therapist in order to evaluate whether reunification with Father would be appropriate. The juvenile court also ordered a home study investigation for Father's home. In a confidential reunification assessment report submitted to the juvenile court, the clinical social worker made recommendations regarding the reunification of Father and Child and copies of the report were delivered to counsel for both parties by the juvenile court. Although the report was not admitted into evidence at trial, the

report was included in the record on appeal and several references about the report were made throughout the trial. See *In re E.G.*, 315 Ga. App. 35, 40 (1) (726 SE2d 510) (2012) (juvenile court did not err in considering a report not admitted into evidence at trial when the report was confirmed by testimony and made part of the record). Moreover, even if the trial court's consideration of the content of the report was error, such consideration by the trial court was harmless because the report was cumulative of other evidence which was properly admitted and considered by the trial court. See *In re B.M.*, 252 Ga. App. 716, 720 (1) (556 SE2d 883) (2001) ("Even assuming that in its final order the juvenile court took notice of some facts not entered in evidence, . . . the juvenile court's conclusion . . . was amply supported by other evidence that was properly admitted." (footnote omitted)).

b. In the order giving rise to this appeal, the trial court made the following findings:

> On March 29, 2019, the GAL sent an email to [the reunification therapist] in which he summarized a telephone call he had just finished with [the nurse practitioner] in which she had recommended that the reunification therapy be stopped because it was "negatively affecting the child."

In a responsive email to the GAL, on March 30, 2019, [the reunification therapist] wrote:

'There is absolutely nothing stressful during the meetings. [Child] is happy and excited to see his daddy, and he is ready to come right in and go back to my office. [Child] shows no hesitancy, fear or resistance whatsoever. Father and son play great! Dad is very loving, patient and upbeat. [Child] is very happy, playful and loving. It is a pleasure to observe.

I like mom a lot and I think she is a very loving mom. But she is very anxious. . . . her anxiety is obvious.

I believe the pediatrician is misattributing the cause of the anxiety. . . . Plus, mom is hypervigilant for any symptoms before and after meetings with his dad. When kids are psychosomatic, the LAST thing a parent, teacher or doctor should do is give attention to the symptom, because giving attention [sic] the symptom actually reinforces the symptom."

Mother contends the trial court's reliance on this email exchange in its findings of fact warrants reversal. We discern no reversible error. At trial, the GAL, reunification therapist, and nurse practitioner each appeared and gave testimony related directly to the content of the email exchange. The nurse practitioner testified that she spoke with the GAL and expressed her concerns about the effects the

reunification therapy was having on Child's anxiety. At trial, the reunification therapist testified similarly to the statements made in the email exchange with the GAL. When asked to describe the interaction between Father and Child, the reunification therapist stated:

> Excellent. It was very - - the child showed no anxiety, showed no apprehension. The child - - the very first visit, the child immediately ran over and gave his father a hug.

The reunification therapist went on to say that he recommended to the GAL that Father and Child have unsupervised visits away from his office. The GAL testified that he spoke with both the nurse practitioner and the reunification therapist, among others, and based his final recommendations in part on those communications.

Although the emails were not admitted into evidence at trial, the trial court heard direct testimony concerning the essence of what was discussed in those emails from all three individuals referenced in the email exchange. Thus any reliance by the trial court on the email exchange was cumulative to the testimonial evidence presented at trial and does not warrant reversal. See *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014) ("We review the trial court's findings of fact

under the clearly erroneous standard, meaning that we must uphold a finding if there is any evidence in the record to support it." (citation omitted)).

*Judgment affirmed. Mercier, J., concurs fully in Divisions 1 and 3 and concurs in judgment only in Division 2;  and Miller, P. J., concurs in judgment only as to Divisions 2 and 3 and dissents as to Division 1.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2.**

A20A0204. PERKINS v. HAYES.                                        CO-007

MILLER, Presiding Judge.

Because I believe that the mother's claim regarding the trial court's delegation of its authority to the guardian ad litem is not moot and that the trial court erred by requiring the guardian ad litem to establish the guidelines surrounding the father's visitation with the child in Atlanta, I respectfully dissent from the majority's holding in Division 1.[1]

In the final order and the parenting plan order, the trial court permits the father to visit with the child both in Atlanta where the child resides and at the father's home in Alabama. The parenting plan order states that the father is allowed to have weekend visits with the child at the father's home in Alabama beginning on the date specified in the final order, which was September 1, 2019. The final order also allowed the father to immediately begin visiting with the child in Atlanta subject to

---

[1] I concur in judgment only as to Division 2 and Division 3.

the guardian ad litem's guidelines, and the parenting plan order also allows the father to visit with the child one Saturday per month in Atlanta. There is nothing in the record showing that visitation in Atlanta subject to the guardian ad litem's guidelines ceased on September 1, 2019. Thus, visitation in Atlanta subject to the guardian ad litem's guidelines is an ongoing matter. Accordingly, the record does not support the conclusion that the mother's claim regarding the father's visitation with the child in Atlanta is moot.

I also believe that the trial court erred by requiring the guardian ad litem to establish the guidelines for the father's visitation with the child in Atlanta. Although a trial court is permitted to consider an expert's opinion in crafting a custody/visitation order, *Pate v. Sadlock*, 345 Ga. App. 591, 597 (3) (814 SE2d 760) (2018), I believe that the trial court improperly delegated its authority by requiring the guardian ad litem to establish the guidelines, and that the portion of the order relating to the improper provision should be remanded to the trial court for correction. See *Hardin v. Hardin*, 338 Ga. App. 541, 545-546 (1) (790 SE2d 546) (2016). I therefore respectfully dissent from Division 1.